# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **MISTIE MCCURRY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **Case No.:  1:14-cv-00520-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), claimant Mistie McCurry seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. McCurry's claims for a period of disability, disability insurance benefits, and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## PROCEDURAL HISTORY

Ms. McCurry filed for a period of disability, disability insurance benefits, and supplemental security income on June 7, 2011. (Doc. 6-6, pp. 2-12).[1]  Ms.

---

[1] The ALJ's decision reports that Ms. McCurry filed her application on May 16, 2011. (Doc. 6-3 p 48). The applications are dated June 7, 2011. (Doc. 6-6, pp. 2, 9). This discrepancy is immaterial to the Court's analysis.

McCurry alleges that her disability began on May 1, 2010. (Doc. 6-6, p. 14).[2]  The

Commissioner initially denied Ms. McCurry's claims on July 29, 2011.  (Doc. 6-5,

pp. 4, 9).  Ms. McCurry requested a hearing before an Administrative Law Judge

(ALJ).  (Doc. 6-3, p. 65).  The ALJ held a hearing on September 11, 2012.  (*Id.*, p.

65).  The ALJ denied Ms. McCurry's claim on October 24, 2012. (*Id.*, pp. 48-60).

On February 26, 2014, the Appeals Council declined Ms. McCurry's request for

review (*Id.*, pp. 2-6), making the Commissioner's decision final.  That decision is a

proper candidate for this Court's judicial review.  *See* 42 U.S.C. §§ 405(g),

1383(c).

## STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the

ALJ denies benefits and the Appeals Council denies review," the Court "review[s]

the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir.

2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record

to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is

such relevant evidence as a reasonable person would accept as adequate to support

---

[2] Ms. McCurry originally alleged that her disability began on January 1, 2007.  (Doc. 6-6, pp. 2,
8).  On October 3, 2011, Ms. McCurry amended her alleged onset date to May 1, 2010.  (*Id.*, p.
13).

a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.   *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).   If the ALJ's decision is supported by substantial evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven she is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past

relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The ALJ found that Ms. McCurry has not engaged in substantial gainful activity since May 1, 2010, the alleged onset date. (Doc. 6-3, p. 50). The ALJ determined that Ms. McCurry suffers from the following severe impairments: "fibromyalgia, hypertension, degenerative disc disease, chronic obstructive pulmonary disorder ("COPD"), diabetes, obesity, and bone spurs (heels)." (*Id.*, p. 50). The ALJ also found that Ms. McCurry has an anxiety disorder, but it is a non-severe impairment. (*Id.*, p. 51).

After evaluating these impairments, the ALJ concluded that Ms. McCurry does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*, p. 52). Next, the ALJ determined that Ms. McCurry has the RFC to perform sedentary work except Ms. McCurry:

> must periodically alternate sitting and standing at 30 minute or greater intervals to relieve pain or discomfort; can perform occasional pushing or pulling with upper and lower extremities; no climbing ladders, ropes, scaffolds; occasional climbing ramps and stairs; occasional balancing, kneeling, crouching, crawling, stooping; must avoid concentrated exposure to extreme heat and cold, vibration, humidity/wetness, fumes, odors, chemicals, gases, dust, and poorly ventilated areas; and she can have no exposure to dangerous machinery or unprotected heights.

(*Id.*, p. 53).  Based on this RFC, the ALJ concluded that Ms. McCurry is not able to perform her past relevant work as a cleaner, housekeeper, restaurant manager, bartender, or fast food manager.  (*Id.*, p. 58).  Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. McCurry can perform, including information clerk, telephone order clerk, and document preparer.  (*Id.*, p. 59). Accordingly, the ALJ determined that Ms. McCurry is not disabled as defined in the Social Security Act.  (*Id.*, p. 60).

## ANALYSIS

Ms. McCurry argues that she is entitled to relief from the ALJ's decision because substantial evidence does not support the ALJ's evaluation of the opinions of two consultative examiners, Dr. David McLain and Dr. Sathyan Iyer.  (Doc. 8, pp. 6-12).  The Court disagrees.

An ALJ is required to consider every medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  "'[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'"  *Gaskin v. Comm'r Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (quoting *Winschel*, 631 F.3d at 1179). Otherwise, the Court "cannot determine whether substantial evidence supports the ALJ's decision." *Denomme v. Comm'r, Soc. Sec.*, 518 Fed. Appx. 875, 877 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1179).  Both Dr.

McLain and Dr. Iyer are one-time examiners; therefore, the ALJ need not defer to their opinions. *Crawford*, 363 F.3d at 1160 (holding that, in general, the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006). Here, the ALJ gave less weight to Dr. McLain's opinion and greater weight to Dr. Iyer's opinion. Substantial evidence supports this decision.

Dr. McLain examined Ms. McCurry on January 31, 2012. (Doc. 6-9, p. 17). Dr. McLain found that Ms. McCurry had a normal gait, normal neurological testing, and tenderness to palpation at thirteen of eighteen tender point areas compatible with fibromyalgia. (*Id.*, p. 22). Dr. McLain made no range of motion, muscle strength, walking, or straight-leg raising findings. (*Id.*, p. 20-23). Based on his examination, Dr. McLain diagnosed Ms. McCurry with osteoarthritis, degenerative disc disease, fibromyalgia, diabetes, hypertension, COPD, and artherosclerosis and concluded that Ms. McCurry is "Totally Disabled from Any Employment." (*Id.*, p. 22).

Also on January 31, 2012, Dr. McLain completed a physical capacities evaluation ("PCE") and a clinical assessment of pain. (*Id.*, pp. 18-19). In his PCE, Dr. McLain opined that Ms. McCurry could sit for four hours and stand or walk for

two hours during an eight-hour workday; lift five pounds frequently and ten pounds occasionally; should "avoid dust, fumes, gasses, extremes of temperatures, humidity and other environmental pollutants;" can frequently perform fine manipulation and occasionally perform gross manipulation; can occasionally climb stairs or ladders, reach (including overhead), and operate motor vehicles; and can rarely push or pull (with arms or legs), bend and/or stoop, or work with or around hazardous machinery. (*Id.*, p. 18). Dr. McLain also opined that Ms. McCurry would be absent from work more than four days each month. (*Id.*). These work restrictions for Ms. McCurry were based upon Dr. McLain's assessment of Ms. McCurry's osteoarthritis, degenerative disc disease, and fibromyalgia. (*Id.*).

Dr. McLain concluded that Ms. McCurry's pain is substantial enough to be distracting to adequate performance of daily activities or work; that physical activity increased Ms. McCurry's pain to such an extent that bed rest or medication was necessary; and that Ms. McCurry's drug side effects could be expected to be severe and limit Ms. McCurry's ability to function. (*Id.*, p. 19).

The ALJ found that Dr. McLain's opinion was "somewhat consistent with a less than sedentary residual functional capacity," but the ALJ concluded that Dr. McClain's opinions about Ms. McCurry's "limitations and her level of pain are not supported by the evidence on record." (Doc. 6-3, p. 57). The ALJ determined that Dr. McClain's opinion lacked "persuasive weight" because the opinion is

7

inconsistent with the objective medical evidence on record and Ms. McCurry's activities of daily living, which included preparing meals, light cooking, laundry, driving a car, sewing, and swimming.  (*Id.*; Doc. 6-7, pp. 13-20).  The ALJ also gave less weight to Dr. McClain's opinion because the opinion is not supported by clinical evidence.  (*Id.*).

Substantial evidence supports the weight that the ALJ assigned to Dr. McLain's opinion because Dr. McLain's opinion is inconsistent with other medical evidence in the record.  For example, Ms. McCurry's medical records from 2004 through December 2011 demonstrate that she received treatment primarily for her high blood pressure, COPD, and obesity, not for fibromyalgia or back problems. (Doc. 6-8, pp. 3, 8, 13, 20-31, 45-46; Doc. 6-9, pp. 26, 38).  These consultations generally reflect positive statuses and routine check-ups.  (Doc. 6-8, pp. 13-31; Doc. 6-9, pp. 16, 26).  Specifically, during an examination in January of 2007, Ms. McCurry showed normal tendon reflexes, lumbar tenderness, positive right straight leg raising, and negative left straight leg raising.  During the examination, Ms. McCurry denied musculoskeletal or neurological problems or symptoms.  (Doc. 6-8, pp. 13-14).  Ms. McCurry visited the hospital in May, September, and October of 2011 for back pain.  Records show generally normal musculoskeletal testing, including normal, non-tender range of motion, normal gait, and no edema or tenderness.  (*Id.*, pp. 101, 104-05, 118, 124).

Additionally, Ms. McCurry's medical records demonstrate that her treating physician, Dr. Louis L. DiValentin did not diagnose Ms. McCurry with fibromyalgia until two weeks after Ms. McCurry visited Dr. McLain. (Doc. 6-9, pp. 21, 27). Dr. DiValentin's records show unremarkable musculoskeletal testing. (*Id.*, pp. 25-38; Doc. 6-8, pp. 16-35). For example, although Ms. McCurry complained of left leg pain in October 2011 and December 2011, during her May, September, and October 2012 consultations with Dr. DiValentin, Ms. McCurry denied any complaints. (Doc. 6-9, pp. 26-33). And, during multiple consultations in 2011 and 2012, Dr. DiValentin noted that Ms. McCurry's fibromyalgia and other medical conditions appeared "fairly well controlled" and that Ms. McCurry was "doing well." (*Id.*, pp. 26-27).

Ms. McCurry fails to address the ALJ's observation that Dr. McLain's opinions were inconsistent with her reported activities of daily living. "Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability," an ALJ may consider a claimant's daily activities. *Hoffman v. Astrue*, 259 Fed. Appx. 213, 219 (11th Cir. 2009). Ms. McCurry admits that she does light housework, drives, shops, sews, and swims. (Doc. 6-7, pp. 13-20; Doc. 6-8, p. 56). The ALJ properly considered Ms. McCurry's activities of daily living and other medical evidence on record when evaluating Dr. McLain's opinion, and the ALJ offered a sufficient

explanation for affording Dr. McLain's opinion less than persuasive weight. The record supports this explanation. *See Poellnitz v. Astrue*, 349 Fed. Appx. 500, 503 (11th Cir. 2009) (holding that the opinion of an examining physician as to marked and extreme limitations was properly discounted due to her own reports, and the claimant's activities of daily living); *Russell v. Astrue*, 331 Fed. Appx. 678, 682 (11th Cir. 2009) (the ALJ properly rejected the opinion of an examining physician in part because the claimant's "other medical records did not support [the examining physician's] opinion"). Because Dr. McLain's opinion is not entitled to deference, and because the ALJ stated with particularity the weight assigned to Dr. McLain's opinion and the reasons for the weight assigned, substantial evidence supports the ALJ's decision to give little weight to a portion of Dr. McLain's opinion.

Substantial evidence also supports the ALJ's evaluation of Dr. Iyer's opinion. Dr. Iyer examined Ms. McCurry on July 15, 2011. Ms. McCurry reported that she had suffered from bone spurs on the back of her heels for the past two years, and she had difficulty walking and climbing because of the pain. Ms. McCurry told Dr. Iyer that she had been diagnosed with arthritis in her feet. Ms. McCurry also reported pain in her arms and forearms. According to Ms. McCurry, she sometimes has soreness over different parts of her body. (Doc. 6-8, p. 51).

Upon examination, Dr. Iyer noted that Ms. McCurry had some tenderness around her Achilles tendon.  (*Id.*, p. 52).  But Dr. Iyer found that Ms. McCurry had full range of motion in all major joints, negative straight leg raising, normal muscle power in her lower and upper extremities, and normal gait.  Ms. McCurry also could walk on her heels and toes and squat.  (*Id.*).  Dr. Iyer had the impression that Ms. McCurry has possible Achilles tendonitis, hypertension under fair control, type II diabetes, history of mild anxiety and depression, and a history suggestive of fibromyalgia.  (*Id.*, p. 53).  Based on these findings, Dr. Iyer opined that Ms. McCurry "may have some impairment of functions involving walking, climbing, and squatting," but she "does not have any limitation of functions involving sitting, standing, handling, hearing, or speaking."  (*Id.*).

The ALJ gave substantial weight to Dr. Iyer's opinion because the opinion "is well supported by [Dr. Iyer's] own clinical examinations and testing" and "is generally consistent with the record as a whole."  (Doc. 6-3, p. 56).  Dr. Iyer tested Ms. McCurry's range of motion, straight leg raising, muscle power, motor functioning, and ability to walk and squat.   (Doc. 6-8, p. 52).  And Dr. Iyer's opinion is consistent with the medical evidence of record discussed above.  *See* pp. 8-9, *supra*.  Therefore, substantial evidence supports the ALJ's decision to give more weight to Dr. Iyer's opinion.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly

medical signs and laboratory findings, the more weight we will give that opinion.);
20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the
record as a whole, the more weight we will give to that opinion.").

The Court is not persuaded by Ms. McCurry's argument that the ALJ should
have discredited Dr. Iyer's opinion because Dr. Iyer did not make definitive
diagnoses.   First, Ms. McCurry cites no case law or other authority for this
contention.   Second, whether labeled diagnoses or impressions, Ms. McCurry's
identified impairments do not "report the extent to which [Ms. McCurry] is limited
in her ability to work." *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005).   A
finding of disability hinges on the functional limitations that accompany a
condition, not the existence of the condition itself.   *See McCruter v. Bowen*, 791
F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained
disability must be measured in terms of its effect upon ability to work, and not
simply in terms of deviation from purely medical standards of bodily perfection or
normality.").   Here, Dr. Iyer made specific findings about how Ms. McCurry's
identified impairments limit her functioning.   (Doc. 6-8, 53).   The ALJ
incorporated a portion of Dr. Iyer's evaluation into the RFC determination and
even accounted for even greater sitting and standing limitations than Dr. Iyer
recommended.   Although Dr. Iyer found no limitations involving sitting and

standing, the ALJ's RFC determination provides a sit-stand option in 30 minute intervals.  (*See id.*; Doc. 6-3, p. 53).

## CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Accordingly, the Court will affirm the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 31, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

13